IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEBRA R. KOHL | ) | |
| | ) | No. 3-09-1190 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

Pending before the Court is the defndant's motion to dismiss or, alternatively, for summary judgment, see Docket Entry Nos. 34, 36, and 38, to which the plaintiff has responded, see Docket Entry Nos. 41-43, and the defendant has replied, see Docket Entry Nos. 55 and 60.

I. BACKGROUND

The plaintiff filed this action under the Federal Tort Claims Act ("FTCA"), 18 U.S.C. §§ 1346(b) and 2671-2680, seeking damages for injuries suffered on December 4, 2007.[1] The plaintiff was employed as a certified bomb technician in the Hazardous Devices Unit[2] of the Metropolitan Nashville Police Department ("MNPD").  During the week of December 3, 2007, the Oak Ridge National Laboratory ("ORNL"), managed by UT-Battelle for the Department of Energy, rented the explosives range at the Tennessee State Fire Academy ("TFACA") in Bell Buckle, Tennessee,[3] to conduct experiments funded by the United States Department of Defense.  The

---

[1] The factual background set forth herein is, unless otherwise indicated, based on the undisputed material facts (Docket Entry No. 41), the plaintiff's deposition testimony, and/or other portions of the record that are either undisputed or are by proffered by the plaintiff.

[2] The Hazardous Devices Unit was previously known as the "Bomb Squad." See Docket Entry No. 43-5, at 7.

[3] The plaintiff cites to the deposition testimony of ATF Agent Jason Harrell, who explained that he had "made the arrangements" for the use of the TFACA. Docket Entry No. 41, at 1-2; Docket Entry No. 43-3, at 26.

project involved detonating three vehicles and gathering evidence from those vehicles after the detonation.

Although the parties dispute what agency had primary or ultimate control over the project, representatives of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), including Jason Harrell and Alex Guerrero, ATF Explosive Enforcement Officers ("EEOs"), and Robert "Bob" Pollard, Special Agent in Charge ("SAC") of Special Operations of the Tennessee Bomb and Arson Section of the Fire Prevention Division of the Tennessee Department of Commerce and Insurance[4] participated in the project.[5] Two MNPD bomb technicians, the plaintiff and Todd Mask, also participated at Agent Pollard's invitation to assist with evidence recovery.

The plaintiff and Officer Mask began to conduct a post-blast investigation on one of the vehicles, a minivan, after it had been detonated. The plaintiff began searching the passenger side of the minivan and Officer Mask tried to begin a search of the driver's side of the minivan, but the door on the driver's side "wouldn't open because it had been blown in." Docket Entry No. 41, at 5, ¶ 12. In an unsuccessful attempt to dislodge the door, Agent Guerrero used a winch to try to open the door or to pull the skin from the door.[6] The plaintiff, Agent Pollard, and Officer Mask moved away from the minivan while Agent Guerrero used the winch. While others discussed the possibility of winching the door again, the plaintiff returned to the minivan and resumed searching for evidence. Although she was physically outside the minivan, she was leaning into the minivan. Docket Entry No. 1, at 3, ¶ 10.

---

[4] Although the parties refer to Agent Pollard as the SAC of Special Operations of the "Tennessee Bomb and Arson Section," he testified in his deposition that the Bomb and Arson Section is part of the Tennessee Department of Commerce and Insurance. See Docket Entry No. 43-2, at 4.

[5] Although the defendant maintains that Dr. Linda Lewis of ORNL was "in charge" of the research project, the plaintiff cites the deposition of Agent Pollard, Docket Entry No. 43-2, at 5, in which he testified that the research project was an ATF operation and that the ATF was in charge of the "overall safety administration of the operation." See Docket Entry No. 41, at 2, § 3.

[6] Whether or not the purpose of using the winch was to open the door or to "pull the skin from the door," it appears undisputed that the reason for using the winch was to enable access into the minivan to facilitate the post-blast investigation of the minivan.

Specifically, the plaintiff testified in deposition, "So while they were getting ready to do all that, I went ahead and went back and started searching where I had stopped [before the first winching attempt] on the passenger door side of the vehicle." Docket Entry No. 41, at 7, § 16; Docket Entry No. 43-5, at 20, 35. Although the plaintiff acknowledged that, when she walked away, "they were discussing that [winching the door again] was a possibility," she does not know whether or when they began to use the winch again. Docket Entry No. 43-5, at 20. The next thing she remembers was feeling pain in her head and seeing "stars." Docket Entry No. 41, at 8, § 17; Docket Entry No. 43-5, at 20. Agent Guerrero, Officer Mask, Agent Harrell, and Agent Pollard did not see the plaintiff get hurt, although Officer Mask, Agent Pollard and Agent Harrell saw the plaintiff rubbing her head or saw "SAC Pollard rubbing [her] head." Docket Entry No. 41, at 15, ¶ 29. The plaintiff thereafter reported that she was fine and she resumed working. Id. ¶ 30.

The plaintiff testified in her deposition that, while riding home from the project, her "head was painful" and she felt lethargic. Docket Entry No. 43-5, at 23. She sought medical care the next day and was later referred to a neurologist, who ultimately diagnosed her with "post-concussive syndrome with persistent headaches and cognitive changes," Docket Entry No. 43-7, at 8, which she opined were caused during the incident, resulting in permanent brain damage. Id at 13. The plaintiff has not been employed since that time. Docket Entry No. 43-5, at 26.

It is the plaintiff's position that she was unaware that Agent Guerrero was using the winch, and by the winch's "pulling the minivan laterally by its door, the minivan's spring loaded up with force, with gradual pressure building up," and "the 'skin' of the minivan's door either turned loose or ripped out, and the minivan recoiled to its rest position by rocking back in the opposite direction," and that the "force of the minivan slammed into" her head. Docket Entry No. 41, at 23, § 51;[7] Docket Entry No. 66, at 2. The plaintiff alleges that the defendant's employees were negligent in

---

[7] The defendant did not respond to the plaintiff's additional statements of material facts (Docket Entry No. 41, at 22-24, ¶ 42-51), as required by Local Rule 56.01(d). Regardless, those asserted facts are assertions of disputed facts inasmuch as the non-movant's statement of additional facts are those about which the plaintiff asserts there are genuine issues to be tried. See Local Rule 56.01(c).

3

operating the winch in an unsafe manner, by failing to warn the plaintiff of the dangers regarding the winch operations, by conducting the operation without proper safety protocols in place, and by otherwise failing to use reasonable and due care to prevent injury to the plaintiff. Docket Entry No. 42, at 29; Docket Entry No. 1, at 3, ¶ 19. As a result, the plaintiff claims that she suffered brain damage with persistent headaches and cognitive losses, and seeks damages for loss of earnings, medical expenses, past and future pain, mental suffering, permanent injury, and loss of enjoyment of life.

The defendant styles its motion as a motion to dismiss or, alternatively, for summary judgment. It is clear that the defendant intends to seek dismissal of the plaintiff's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction under the discretionary function exception of the FTCA. The defendant also seeks summary judgment on the remaining grounds, specifically, that the plaintiff's claims are barred by the Tennessee Fireman's Rule and by the doctrine of assumption of risk, and because there is no evidence that any employee of the defendant was negligent. Since the defendant has raised a question of this Court's jurisdiction, the Court must, as a threshold matter, determine whether there is subject matter jurisdiction over the plaintiff's claims in this case.

## II. STANDARD OF REVIEW

Under Rule 12(b)(1), there are two types of attacks on the Court's subject matter jurisdiction. The defendant may bring a facial attack or a factual attack. A facial attack challenges the sufficiency of the pleading and all allegations made by the plaintiff in her complaint must be accepted as true. If the defendant brings a factual attack, the facts alleged in the complaint are not presumed to be true and, if there is a factual dispute, the Court may consider and weigh the conflicting evidence outside the pleadings to arrive at a factual predicate to establish whether or not there is subject-matter jurisdiction. See Gentek Bldg. Prods., Inc. v. Sherman-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007); Abbott v. Michigan, 474 F.3d 324, 328 (6th Cir. 2007); DLX, Inc.

4

v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004), cert. denied, 544 U.S. 961, 125 S.Ct. 1733, 161 L.Ed.2d 603 (2005); RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996).

The plaintiff has the burden of establishing subject-matter jurisdiction to survive a Rule 12(b)(1) motion. See Lewis v. Whirlpool Corp., 630 F.3d 484, 487 (6th Cir. 2011); Nichols v. Muskingum Coll., 318 F.3d 674, 677 (6th Cir. 2003); Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990); Chesney v. Tennessee Valley Auth., _ F.Supp.2d _, 2011 WL 1099802, *4 (E.D. Tenn. Mar. 22, 2011). Which party has the burden of proof when the government asserts the discretionary function exception to the FTCA is, however, not quite as clear. See Carlyle v. United States, 674 F.2d 554, 556 (6th Cir. 1982) ("Only after a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by § 2680 does the burden fall on the government to provide the applicability of a specific provision of § 2680 [including the discretionary function exception]"). However, in United States v. Gaubert, 499 U.S. 315, 324-25, 111 S.Ct. 1267, 113 L.Ed. 2d 335 (1991), it appeared that the Supreme Court found that the plaintiff had the burden of proof to show that the discretionary function exception did not apply, at least in the context of a facial challenge. See Sharp v. United States, 401 F.3d 440, 443 n.1 (6th Cir. 2005). The Court finds that it is not necessary to resolve the issue of which party has the burden of proof because the Court has not considered any facts proffered by the defendant that the plaintiff disputes. See n.1 supra.

It is not entirely clear whether the government raises a facial or factual attack. The government accurately describes the law that "[i]n the context of an action under the FTCA, the complaint must, on its face, allege matters that fall outside one of the exceptions to the United States' waiver of sovereign immunity enumerated in 28 U.S.C. § 2680 . . . . Furthermore, even if the complaint does facially state a claim, where, as here, one of the parties raises a factual challenge to the court's jurisdiction, the trial court is empowered to resolve factual issues related to the

5

jurisdictional question." Docket Entry No. 38, at 14-15 (emphasis added). The defendant did not clearly indicate whether it believes that the plaintiff had "facially state[d] a claim" in her complaint.

In Commodities Export Co. v. United States Customs Serv., 888 F.2d 431, 436 (6th Cir. 1989), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 56 (1992), the Sixth Circuit held that the Court must hold a preliminary hearing or hearing at trial before ruling on a Rule 12(b) motion-- particularly a Rule 12(b)(1) motion premised on a jurisdictional defect--to determine any disputed facts "upon which the motion or the opposition to it is predicated." The Court explained such a procedure is contemplated by Rule 12(d) when "a trial court entertain[s] a [Rule 12(b) motion] for dismissal, and having before it the opponent's application for a hearing." Pursuant to Rule 12(d), a motion brought under Rule 12(b)(6) or 12(c) must be converted to a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the Court, and the parties must be given "a reasonable opportunity to present all the material that is pertinent to the motion."

The Court finds that, under the circumstances of this case, is it not required by Commodities Export to conduct a preliminary hearing or reserve the motion to trial. First, although the Sixth Circuit cited Rule 12(d), that rule, by its terms, only applies to motions brought under Rule 12(b)(6) or Rule 12(c), not to motions brought pursuant to Rule 12(b)(1). Regardless, the circumstances in this case are vastly distinguishable from those in Commodities Export.

First, upon plaintiff's request, a hearing was held on the defendant's motion, at which time the plaintiff could have sought, but did not seek, to have an evidentiary hearing, whereas in Commodities Export, the Court scheduled a hearing but ruled on the motion before the hearing without indicating why a hearing was unnecessary. Second, unlike in Commodities Export, the parties in this case have had ample opportunity to conduct discovery and present evidence outside the pleadings. A decision on the Rule 12(b)(1) motion cannot be considered premature in that respect. In addition, as the Court noted in Commodities Export, when the facts are relatively simple and "substantially uncontroverted and the law is not complex, the Court may rule on a Rule 12(b)(1) motion without making findings on disputed issues of fact." Id. at 436-47. In fact, in Kerry Steel,

6

Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997), the Court found that it was not an abuse of discretion for the trial court to have ruled on a Rule 12(b)(2) motion without holding an evidentiary hearing when the Court assumed all of the plaintiff's factual allegations to be true and thus there were no facts in dispute.

For the purposes of determining whether the discretionary function exception applies, the Court will assume that the facts alleged in the plaintiff's complaint are true, and will consider only those additional facts proffered by the plaintiff or additional facts about which there is no dispute. Although the Court has not limited its consideration of the pleadings, as it must in a case in which a pure facial attack is made, the Court finds that there is no need to resolve issues of disputed fact, as it would in a case in which a factual attack is made, because the jurisdictional issue can be resolved without doing so since the disputed issues of fact are irrelevant to the consideration of subject matter jurisdiction.[8]

### III.  DISCRETIONARY FUNCTION EXCEPTION

Unless otherwise waived, claims against the United States are barred by sovereign immunity and thus the United States cannot be sued without its consent. United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); Montez v. United States, 359 F.3d 392, 395 (6th Cir. 2004); Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir. 1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). The FTCA provides a waiver of that immunity for claims:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if

---

[8] The Court agrees with the plaintiff that the application of the discretionary function exception and the negligence of the defendant are two distinct inquiries and, to the extent that the defendant has "collapse[d]" those two considerations by seeking summary judgment on the issue of the discretionary function exception, the Court further agrees that such a posture is inappropriate. The Court also agrees with the plaintiff that the evidence proffered by the defendant and disputed by the plaintiff is not material to the consideration of the applicability of the discretionary function exception. See Docket Entry No. 42, at 32-33.

7

> a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

However, there are exceptions to the waiver of sovereign immunity, including the "discretionary function" exception that protects the government from liability for claims

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The purpose of the discretionary function exception is to prevent judicial second-guessing of governmental actions and decisions based on considerations of social, economic and political public policy. Gaubert v. United States, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 537, 10 S.Ct. 1954, 100 L.Ed.2d 531 (1988); United States v. S.A. Empresa de Viacao Aereo Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Therefore, if the discretionary function exception applies, this Court is without subject matter jurisdiction. Feyers, 749 F.2d at 1225; Sharp, 401 F.3d at 443; Rich v. United States, 119 F.3d 447, 449 (6th Cir. 1997).

The Court must employ a two-part test to determine whether the discretionary function exception applies to the conduct at issue. The Court must first determine whether the act or omission violated a mandatory regulation or policy that did not permit any discretion, i.e., any judgment or choice. Gaubert, 499 U.S. at 322; Sharp, 401 F.3d at 443; Rosebush v. United States, 119 F.3d 438, 441 (6th Cir. 1997). If a government employee violates the mandatory regulation or policy, there is no exception to the FTCA waiver of sovereign immunity, whereas if the employee follows the regulation, the discretionary function exception applies because the employee had no discretion.

If there is no applicable mandatory regulation or policy, the Court must determine if the conduct at issue was the kind of discretionary function that section 2680(a) was designed to cover,

8

i.e., discretionary conduct grounded in social, economic, and political policy. Gaubert, 449 U.S. at 322; Varig Airlines, 467 U.S. at 814; Edwards v. Tennessee Valley Auth., 255 F.3d 318, 322-23 (6th Cir. 2001); Wright v. United States, 868 F.Supp. 930, 932-33 (E.D. Tenn. 1994), aff'd, 1996 WL 172119 (6th Cir. Apr. 11, 1996). As the Supreme Court explained, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. A discretionary act applies to day-to-day operations or management as well as to "policymaking or planning functions," and the nature of the conduct, rather than the "status of the actor," governs the applicability of the discretionary function exception. Id. at 325.

There is no dispute that there was no mandatory statute or regulation governing the conduct at issue. Thus, the challenged conduct was discretionary and the relevant inquiry is whether the conduct at issue is grounded in social, economic or political policy that the discretionary function exception is designed to protect the government from liability. Specifically, the issue is whether the conduct was grounded in considerations of public policy and involved the permissible exercise of policy judgment. Gaubert, 499 U.S. at 324-25; Berkovitz, 486 U.S. at 537; Varig Airlines, 467 U.S. at 814. Thus, the issue is not whether the decision or conduct involved such policy considerations but whether the particular decision giving rise to the conduct was grounded in such policy considerations. Gaubert, 499 U.S. at 323. Mays v. Tennessee Valley Auth., 699 F.Supp.2d 991, 1016 (E.D. Tenn. 2010).

The cases involving the discretionary function exception to the FTCA typically fall into three categories: (1) the government's response to hazards; (2) decisions about whether and how to make lands safe for visitors; and (3) failure to warn of potential dangers. See Sharp, 401 F.3d at 445; Reetz v. United States, 224 F.3d 794 (6th Cir. 2000); Rosebush, 119 F.3d at 443; Rich, supra; Mays, 699 F.Supp.2d at 1017-18. The defendant cites several cases in which the discretionary function

9

exception applied in failure-to-warn cases. Docket Entry No. 38, at 17.[9] However, those cases, as other cases addressing the failure to warn, typically involve members of the public who come onto government property and are injured by a dangerous condition.

What distinguishes this case from the typical case in which the discretionary function exception is addressed is the fact that the plaintiff was not a member of the public who wandered onto the testing site and was somehow injured by the activities conducted there. The plaintiff was a member of group of law enforcement professionals who participated in the forensic recovery. For the purposes of addressing the discretionary function exception, it appears that the parties believe that the discretionary function should be evaluated as if the plaintiff were simply a member of the public who either had or did not have permission to be on the property. The parties have not provided the Court with any case in which a plaintiff, who has taken part in the operation and is not simply a member of the public, is injured by actions taken by an employee of the United States who is also a participant in the same operation.[10]

Before considering the applicability of the discretionary function exception, the "first crucial step" is to determine what conduct is at issue. Rosebush, 119 F.3d at 441. The defendant appears to contend that the conduct at issue in this case is the recovery and testing of forensic evidence and that the decisions made and acts taken or not taken in furtherance of that mission are part and parcel of the broader conduct of recovery and examination of evidence. The plaintiff does not argue that the decision to perform forensic recovery and testing after blowing up vehicles is not grounded in policy considerations.

---

[9] See, e.g., Rosebush, supra; Kiehn v. United, 984 F.2d 1100 (10th Cir. 1993); Myslakowski v. United States, 806 F.2d 94, 97 (6th Cir. 1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987); Wright, supra.

[10] With local, state and federal agencies working together on task forces and other joint efforts, it would seem that the potential for injury of a non-federal employee could well generate claims of liability against the United States, and that those cases might well provide fodder for raising the discretionary function exception to the FTCA. However, the Court is not aware of any cases that are factually on point in that regard.

10

There is no question that the project conducted at the explosives range during the week of December 3, 2007, was grounded in public policy. Although the defendant has been sensitive to the confidential nature of the mission, suffice it to say that the project implicated concerns relating to national security and defense, terrorism, and military wartime activities.

It is not the decision to perform the testing that the plaintiff asserts as the conduct at issue but rather the operational decision to perform the winching operation in the manner that it was conducted, ultimately resulting in injury to the plaintiff. Thus, the plaintiff contends that the "negligent acts and omissions at issue in this case are operational by nature," and unrelated to "broad policy-level decisions protected by the discretionary function exception." Docket Entry No. 42, at 29.

Neither party's definition of the conduct at issue is entirely appropriate. The defendant appears to take a position that all activities by the law enforcement professionals participating in the project would have been subject to the discretionary function exception. Clearly, such a broad sweeping swath is inappropriate. While the plaintiff is correct that the actions taken or not taken in the winching operation are the asserted cause of the plaintiff's injuries, those actions were taken as part of the overall operation of testing and recovery of forensic evidence. In other words, when it became impossible to open the passenger door of the minivan, a decision was made to attempt to winch the minivan so that evidence recovery would be possible or at least more possible. Detonating vehicles and evidence recovery thereafter were at the heart of the larger operation. Without the participants' ability to recover evidence, the operation would have been at a standstill. Thus, the Court finds that the conduct at issue cannot be construed as narrowly as the plaintiff suggests or as broadly as the defendant implies but rather the conduct at issue is the recovery of forensic evidence and the necessary actions taken to facilitate that recovery, including actions taken to dislodge the door of the minivan so that evidence could be recovered.

In contrast, the plaintiff contends that the operational decision to perform the winching is not a function covered under the discretionary function exception because it does not invoke higher level

11

policy or decisionmaking. However, the Supreme Court found in Gaubert that the day-to-day management of banking affairs requires judgment "as to which of a range of permissible courses is the wisest." 499 U.S. at 325. In Gaubert, a shareholder of an insolvent savings and loan association sued federal regulators for negligent oversight of the operation of the thrift institution. The plaintiff argued that the conduct at issue involved the "mere application of technical skills and business expertise." The Court found that description was "just another way of saying that the considerations involving the day-to-day management of a business concern . . . are so precisely formulated that decisions at the operational level never involve the exercise of discretion within the meaning of § 2680(a), a notion we have already rejected . . . ." 499 U.S. at 331.

The plaintiff analogizes the conduct alleged in this case to a government employee, while in the scope of his employment, negligently driving a car and causing injury to another person. See Docket Entry No. 42, at 29 n.174. The act of winching the car is a far cry from negligently driving a car. In fact, the Supreme Court specifically distinguished a scenario of an employee, while in the scope of his employment, who negligently collides with another car--to which the discretionary function exception would not apply--to the asserted negligent failure to supervise savings and loan association's day-to-day operations--to which the discretionary function exception applies. Gaubert, 499 U.S. at 325 n.7. Under normal circumstances, the manner of driving a car in the scope of a employee's job involves no operational decisionmaking. On the other hand, using a winch to dislodge the door of a minivan from which evidence is to be recovered--the very essence of the project in which the plaintiff was participating--involves decisionmaking on an operational level, including when and how to winch and what precautions, if any, to take.

The plaintiff cites Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), in support of her position that the discretionary function exception does not apply in this case. In Indian Towing, the plaintiff alleged that the United States had failed to maintain a lighthouse in good working order. The Court found that, once the government had undertaken to maintain lighthouse service, the failure to maintain the lighthouse in good working order and to

12

repair the light or warn that it was not functioning subjected the government to liability under the FTCA when seafarers detrimentally relied on the "guidance afforded by the light." 350 U.S. at 69. Although the government in Indian Towing conceded that the discretionary function exception did not apply, subsequent cases have referenced Indian Towing as if the Court had analyzed the discretionary function exception. See, e.g., Gaubert, 499 U.S. at 336 (Scalia, J., concurring); Berkovitz, 486 U.S. at 538 n.3.

The gravamen of the Indian Towing "good samaritan" rationale has, however, been followed in subsequent cases that specifically addressed the discretionary function exception. For instance, in Reminga v. United States, 631 F.2d 449 (6th Cir. 1980), also cited by the plaintiff, the Court found that, once the Federal Aviation Administration ("FAA") arranged for the publication of aeronautical navigation charts, "engender[ing] reliance on them" by pilots, the United States was required to use due care to ensure that they were accurate, and thus the failure to accurately show the location of the tower made the United States liable for injuries suffered by the pilot and passengers who flew into a guy wire that supported the tower. 631 F.2d at 451. The Court specifically found that the discretionary function exception does not apply to "day-to-day decisions made by government employees in the field" and distinguished the applicability of the discretionary function exception in cases involving official planning or policymaking from those in "an operational setting." Id. at 456.

Similarly, in Caplan v. United States, 877 F.2d 1314 (6th Cir. 1989), the Court found that the discretionary function exception did not apply when a dead tree fell on a tree cutter, who had a contract with the U.S. Forest Service to cut trees after a prior mass herbicide tree-killing program. The Court found that, once the government implemented a policy of deforestation, it had to exercise due care in the implementation of that program, including warning the tree cutter of an unreasonably dangerous condition as a result of the unstable dead trees affected by the previous herbicide treatment.

13

The problem with the plaintiff's reliance on these cases is that they precede Gaubert, which clearly expanded the scope of the discretionary function exception to day-to-day operations. As the Sixth Circuit observed in Rosebush, 119 F.3d at 444, "the requirement for a policy nexus is an objective not a subjective one," and the "proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis," quoting Gaubert, 499 U.S. at 324-25. See also Myslakowski v. United States, 806 F.2d 94, 97 (6th Cir. 1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987). Cf. Rosebush, 119 F.2d at 445 (Merritt, J., dissenting) (decrying the potential for the discretionary function exception to "potentially swallow" the entire FTCA).

Even assuming that the good samaritan principle espoused in Indian Towing would be applicable in this case, it would be unavailing to the plaintiff. Concededly, it was within the discretion of the agents for the United States to decide whether or not to use a winch. However, it is too far a stretch to analogize the winching operation to maintaining a lighthouse upon whose light members of the public relied. Only if government employees had previously used in the winch in a manner upon which the plaintiff had previously reasonably and justifiably relied and the plaintiff detrimentally relied on the previous method of operation of the winch could an analogy conceivably be drawn. However, there is no assertion or evidence of any such reliance in this case.

For the reasons set forth above, the Court finds that Gaubert compels a conclusion that the discretionary function exception applies to the conduct at issue in this case. Therefore, this Court is without subject matter jurisdiction over the plaintiff's claims. As a result, there is no need to consider the defendant's other grounds for dismissal of the plaintiff's claims.

An appropriate order will enter.

_____
JULIET GRIFFIN
United States Magistrate Judge